# Price's Appeal.

Section 12 of the Act of April 29, 1874 (P. L. 79), authorizing a corporation to assess upon each share of stock such sums of money as the stockholders think proper, not exceeding in the whole the original par value of the stock, confers the power to make such assessment upon stock the full par value of which has been already paid by the subscriber. The liability to assessment thereby imposed is independent of, and beyond the liability for assessment up to par value.

April 23, 1884.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Montgomery county*:    Of January Term, 1884, No. 178.

This was an appeal by Jacob H. Price from a decree of said court dismissing a bill in equity filed by him, against the Mingo Valley Creamery Association, to restrain the defendant from levying an assessment upon stock of which he was the owner, in excess of the par value thereof.

There was no dispute as to the material facts averred in the bill, viz:

The relevant sections of the Act of 1874 are sections 11, 12, and clause 2 of section 39, which are as follows:

Sec. 11: "And all subscriptions to the capital stock shall be paid in such instalments and at such times as the directors may require, and if default be made in any payment the person or persons in default shall be liable to pay in addition to the amount so called for and unpaid, at the rate of one half of one per centum per month for the delay of such payment, and the directors may cause suit to be brought for the recovery of the amount due, together with the penalty of one half of one per centum per month, as aforesaid, or the directors may cause the stock to be sold in the manner provided in clause 2 of section 39 of this Act."    P. L. page 79.

Sec. 12: "And every corporation may from time to time, at a legal meeting called for the purpose, assess upon each share of stock such sums of money as the corporation may think proper, not exceeding in the whole the amount at which each share was originally limited; and such sums assessed shall be paid the treasurer, at such times and in such instalments as the corporation directs."    P. L. page 79.

Clause 2 of Sec. 39 (P. L. 101): "If the proprietor of any share neglect to pay a sum duly assessed thereon, for the space of thirty days after the time appointed for payment, the treasurer of the company may sell, by public auction, a sufficient number of the shares to pay all assessments then due, with necessary and incidental charges thereon; shall give notice of

the time and place appointed for such sale, and of the sum on each share by advertising the same three weeks successively before the sale, in some newspaper published in said county; and a deed of the shares so sold," etc.

The corporation defendant was incorporated March 21, 1881, under the Act of April 29, 1874, and its supplements, and is included in the second class specified in § 2 of said Act. The complainant was a large stockholder in said corporation, and his stock was fully paid up. Considerable expense was incurred in erecting buildings, etc., to carry on the business of the association, and to provide for this an assessment of $2.00 per share on the capital stock was made at a general meeting of stockholders duly held. The complainant refused to pay this assessment and proceedings were begun under said Act of 1874, § 39, clause 2, to sell his stock at public auction, for the purpose of paying said assessment. Complainant then filed this bill praying for a preliminary injunction until hearing and a perpetual one thereafter, restraining said corporation from selling his stock, and from collecting assessments made upon said stock over and above the original par value.

The parties filed an agreement in lieu of pleadings and Master's report, inter alia, as follows:

Fourth. That for the purpose of this case it is admitted that the meeting of stockholders for the purpose of voting upon the resolution making said assessment, was legally called and held, and that the proceedings thereto were regular and that the notice of the time and place of sale of the stock of plaintiff was duly and legally given.

That the whole amount of the debts which said association owed at the time said assessment of $2 per share was made, exceeded its capital stock actually paid in, and that there was no unpaid purchase money for land, but said debt was contracted in the erection and construction of the buildings by a business committee of which said Jacob H. Price, plaintiff, was a member, and it is further agreed that said assessment was not a proceeding to increase the capital stock but was made to pay off the indebtedness of said Association created prior to that time.

Fifth. That the By-Laws of said Mingo Valley Creamery Association contain the following Article to wit: Article xx. "The shares of the stockholders shall be exempt from taxation except for the payment of the principal of the debt on the real estate of the association."

Sixth. That the question for the opinion of the court be the power and authority of the defendant to make the assessment under Section 12 of the Act of April 29, 1874, and Article xx

of the By-Laws of the Association, and if so then the power to sell said stock as set forth in plaintiff's bill.

Seventh. That if the court be of the opinion that said Association has said power and authority, then said preliminary injunction be dissolved and decree and judgment be made in favor of defendant, but if not then said injunction to be made perpetual and decree and judgment be made in favor of plaintiff, the costs to follow the decree and judgment and either party reserving the right of appeal to the Supreme Court.

The court (BOYER, P. J.), after argument, filed the following opinion and decree:

By the Act of Assembly of April 29, 1874 (P. L., 73, etc.) under which the defendants have been incorporated, there are two kinds of assessments upon the capital stock of such corporations authorized. The one is by call for instalments upon the capital stock subscribed. Such assessments may be made at the pleasure of the board of directors until the entire amount of the par value of the stock shall have been paid up. See section 11 of Act P. L., p. 79. The other kind cannot be laid by the directors, but must be voted by the stockholders at a meeting of the corporation called for that purpose. The words are as follows: "Every corporation may from time to time, at a legal meeting called for the purpose, assess upon each share of stock such sums of money as the corporation may think proper, not exceeding in the whole the amount at which each share was originally limited, and such sums assessed shall be paid to the treasurer at such times and in such instalments as the corporation directs." See section 12, P. L., p. 79.

These two kinds of assessments are provided for, it will be seen, in different sections of the Act, and in very different phraseology, and are manifestly separate and distinct from each other.

The calling in of the instalments upon the stock subscribed until the amount of the subscription price is reached is sufficiently provided for in section 11, and the clause quoted from section 12 would be wholly unnecessary and inoperative unless it related to *additional assessments over and above the original subscription price of the stock.*

It would be inconsistent likewise, because the assessments called for in section 11 are to be made by the *directors*, whilst the assessments authorized in section 12 can be made by the *corporation* alone, at a legal meeting of the stockholders called for the purpose.

There is a *penalty* also attached to default in the payments of instalments called in under section 11 not applicable to

those assessed under section 12, to wit: payment at the rate of one half per cent. per month for the delay of such payment.

We are bound by a recognized maxim, in the construction of statutes, to find a meaning for each section and clause, if it can be done by a reasonable interpretation. The obvious conclusion deducible from a comparison of the two sections is, that by section 12 the corporation is invested with the authority to assess upon each paid up share of stock such sums of money as the stockholders of the corporation may think proper, not exceeding in the whole the original par value of the same; but separate and distinct from the subscription price itself and in addition thereto.

It is of course in the power of any corporation, by its charter and by-laws, to limit this authority to assess its stock still further; and to restrict the exercise of this power to a particular object; and this has been done by the defendant corporation. By article 20 of their constitution they provide, that the shares of the stockholders shall be exempt from "taxation" except for the payment of the principal of the debt on the real estate of the association. The word "taxation" is a somewhat awkward expression, not being used in the Act of Assembly under discussion; but no doubt it refers to the kind of assessment described in section 12. No assessment, therefore, can be levied upon the paid up stock of the plaintiff other than for the payment of the principal of the debt on the real estate of the association. This I understand from the case stated is the object of the assessment in dispute.

The argument against the right of the corporation to assess the stock for this purpose, on the ground that it would practically increase the capital stock of the company, cannot prevail against the express grant of such power, as we have seen, by the Act of Assembly itself. The borrowing of money, which is also authorized by the Act, would operate in the same way by giving the corporation the temporary control of increased funds.

Nor is the fact which is urged on behalf of the plaintiff, that the debts of the corporation at the time of the contested assessments exceeded its capital stock, a bar to the legality of the assessment. The object and effect of the assessment is to diminish the indebtedness. This indebtedness being contracted in the erection of buildings for carrying on the business of the corporation the directors might perhaps escape personal liability, under the exception contained in the 6th clause of section 39 of the Act.

But this is not material to the points involved in this case submitted for decision, to wit:

1st. Whether the defendant corporation had the authority

to make the assessment complained of under section 12 of the Act of April 29, 1874, as set forth in paragraph 6 of plaintiff's bill of complaint, and under article 20 of the constitution and by-laws of the association?

2d. Whether, if so, the said corporation had the authority to sell the stock of the plaintiff so assessed, as set forth in the ninth paragraph of the plaintiff's bill?

The court decides both propositions in the affirmative; it being admitted in the case stated that the meeting of the stockholders for the purpose of voting upon the resolution making said assessment was legally called and held, and that the proceedings therein were regular, and notice of the time and place of the sale of the stock of plaintiff was duly and legally given according to the second clause of section 39 of said Act of 1874; and that the purpose of the assessment was to raise money for the payment of the principal of the debt on the real estate of the association.

And now, December 3, 1883, the preliminary injunction heretofore granted is dissolved, and said bill of complaint dismissed at the costs of plaintiff.

The complainant took this appeal, and assigned for error:

1. The court erred in dissolving the preliminary injunction heretofore granted.

2. The court erred in holding that said corporation had the power and authority to make the assessment complained of in plaintiff's bill.

3. The court erred in holding that said corporation had the authority to sell the stock of the plaintiff so assessed, as set forth in plaintiff's bill.

4. The court erred in holding that said corporation had the power and authority to make additional assessments over and above the original subscription price of the stock, and separate and distinct from the same and in addition thereto.

5. The indebtedness spoken of having been created prior to the assessment (made for the purpose of paying the same) and it being admitted that these debts, at that time, far exceeded the capital stock of said association, the court erred in not holding that the directors were personably liable for said debts under clause 6 of section 39 of said Act, and therefore said assessment is illegal and void.

6. The court erred in its construction of article 20 of the by-laws of said association.

7. The court erred in dismissing said bill.

*Jacob V. Gotwalts*, for the appellant.—This case involves the interpretation of several sections of the Act of 1874, April 29. We contend that the words " calls," " instalments "

and " assessments," are used in said Act as synonymous terms, and in section 12, where it speaks of " assessing upon each share of stock certain sums of money," etc., it means making another call or instalment on the original stock. After payment of instalments or calls, as is provided by section 11 of said Act, debts may be created larger than anticipated, or losses may be sustained, or the business may increase and require more money; then at a legal meeting called for the purpose, the corporation, as provided in section 12, " may assess upon each share of stock such sums as they may think proper." But they cannot " *exceed in the whole the amount at which each share was originally limited.*" The next sentence would seem to indicate that this construction is the correct and true one, because it says, " No note or obligation given by a stockholder whether secured by pledge or otherwise shall be considered as payment of any part of the capital stock," thus showing that this is still the original capital stock, and it cannot be that money raised by assessments, as contemplated by the learned Judge, can be called the capital stock. If so, and a corporation can make assessments after stock is fully paid up, there would be no limit to the capital stock, and sections 18, 19 and 20, etc., of said Act providing for an increase of capital stock can be violated with impunity. Nowhere in said Act is any provision made to make a return in case of assessments over and above the par value of the stock, and all corporations could thus evade the payment of tax and bonus on one half of their capital stock, or one half of the money collected and used by them in their business as capital. Section 18 of said Act providing for the increase of the capital, restricts the corporation and says: " Such increase shall only be made for money, labor done or money or property actually received," and yet under section 12, if these assessments are legal, as interpreted by the learned Judge, although it does really increase the capital stock, yet the corporation has unlimited power, and can make such assessments for any purpose whatever, not confined to money or property actually received or labor done. This power to assess the shares of stockholders is most strictly construed, and must be conferred in clear and explicit terms, either by express language or by necessary implication from the language employed: 1 Potter on Corp., sec. 252; Angell & Ames on Corp., sec. 544.

We contend sections 11 and 12 can consistently be construed together, and both refer to calls or instalments upon the original stock. If not, then section 12 provides no method for collecting the additional assessments, either by suit or the sale of the stock, as provided for in clause 2 of section 39, and the defendants have no authority in law to sell the stock of

the plaintiff as proposed. Section 14 of said Act provides for the liability of stockholders, "that they shall be liable in their individual capacity to the amount of stock held by each of them," and if these assessments are legal, the debts of said corporation may be increased, but creditors have no remedy against stockholders for the excess. Section 17 of said Act provides that any such corporation can take "such real and personal estate, mineral rights, patent rights and other property, and issue stock to the amount of the value thereof in payment thereof, and the stock so issued shall be declared and taken to be full paid stock, and *not liable to any further calls or assessments*," etc. Is it just that the stockholder who furnishes cash, shall be liable to pay *additional assessments*, while the person who furnishes personal property, as above specified, is exempt therefrom.

Compare section 10 of Act of 1849, P. L., 566, which speaks of first half, etc., of original stock, with section 12 of the Act 1874, and the reason for section 12 is very apparent. It is to provide for the instalment or assessment on second half of original stock. We submit that, for the above reasons, the shares of stockholders, when fully paid up, are not further taxable for any purpose.

*E. L. Hallman* and *John W. Bickel*, for the appellee.—The legislature intended, by the Act of 1874, sec. 12, to grant this additional power to corporations. The language of the Act of April 7, 1849, P. L., p. 566, when contrasted with the language of this Act, shows that the legislature conferred this as an additional grant to enable corporations to raise a limited amount of money for the purposes of their business without resorting to an increase of stock or a mortgaging of their real estate. This corporation availed itself of this privilege in the creation of its by-laws wherein by Article XX. it limited the assessments to be made under this grant to the payment of the debt on the real estate. This by-law binds the appellant. Kerr on Injunctions, p. 506–8.

If this be not the object of sec. 12 quoted, then it is meaningless and useless, for sec. 11 provides a full, ample and adequate remedy, vested in the directors for collecting all *calls* on the capital stock originally subscribed. Sec. 12 must therefore either go beyond the original subscriptions to the capital stock and refer to and mean to confer the power this corporation claims it does, or it must refer to and mean the same power as is given by sec. 11. Contrast them, and how is it possible for them to stand together? In sec. 11, the *directors* have power to call in the subscriptions to the capital stock, and in sec. 12, if it referred to the same thing as sec.

11, this very power would be also in the *corporation* at a legal meeting called for the purpose, to call in the subscriptions to the capital stock. We would then have what is unknown to the law—one and the same power vested at one and the same time in two separate, independent bodies. Again, if sections 11 and 12 refer to the same power, how can they be reconciled when they so radically differ in liability? Under sec. 11 the liability of the stockholder is one half of one per cent. per month greater for non-payment of assessments than under sec. 12. Again, the remedy for collection is radically different in the two sections. Sec. 11 is entire and complete in itself; suit may be brought by the directors, or the section itself refers to a remedy under clause 2 of sec. 39, above quoted, of this Act, while sec. 12 is incomplete and needs an additional clause to enforce its provisions. The legislature, seeing this incompleteness in sec. 12, framed clause 2 of sec. 39, above quoted, in order that the provisions of sec. 12 might be carried into effect. How, then, can these two sections, differing so radically in the three vital points named, to wit: method of laying assessments, liability of stockholders thereunder, and method of enforcement, mean one and the same thing? If they do mean the same thing, one must fall; but construe them by the old familiar rule so that both, if possible, may stand, and they are entirely natural and consistent, sec. 11 vesting in the directors the power to regulate calls to the subscriptions of the capital stock, and in the corporators themselves the power to assess the paid up capital stock. In the light of this clear, plain and explicit legislative grant, we need not look for any additional reasons in the Act, nor attempt to harmonize this grant with the provisions contained in other sections, as it conflicts with none, but stands out separate and alone, as a means provided for the corporation to raise money to carry out the object of its creation, being limited in its power to borrow money and secure the same by mortgage to so low a sum as one half its capital stock paid in.

Mr. Justice GREEN delivered the opinion of the court, May 26, 1884.

It is scarcely necessary to add anything to the very satisfactory opinion of the learned court below in this case. There is certainly no difficulty in understanding the intention of the legislature in the two sections—eleven and twelve—of the Act of 1874. The eleventh section relates entirely to the capital stock and the method of collecting the amounts subscribed thereto. It provides for payment of subscriptions in instalments as required by the directors, and fixes a penalty for delay in the payment, with a right to bring suit for the

recovery of both the instalments and the penalty. The twelfth section relates to an entirely different subject, and there is not the slightest inconsistency between the two. This section confers upon the corporation a right to assess upon each share of stock such sums of money as the corporation may think proper, but not to exceed in the whole the amount at which each share was originally limited.

It is too plain for argument, that the assessments thus authorized are burdens which may be imposed upon the perfected stock. They are no part of the price of the stock, and can in no sense be regarded as part of the subscription money to be paid for the shares. They are in addition to, and independent of the capital raised by the sale of the shares, and do not constitute any part of the capital when paid in.

The twelfth section would be totally unnecessary and useless upon the theory of the appellant. Without enlarging upon the reasons so well stated in the opinion of the court below, it is sufficient to say, that we approve of them entirely.

> Decree affirmed and bill dismissed at the cost of the appellant.